## GANS *v.* RENSHAW.

A vendee, by articles of agreement, is not bound to restore the possession to the vendor and give up the contract, before he can make objections to the title in an action brought for the purchase money.

He cannot keep both the estate and the price of it; but it is the vendor's business, if he finds that he cannot make such a title as the vendee is bound to accept, to refund what has been paid, and bring an ejectment for the property.

The vendee is not bound to accept a title depending on a conveyance to a creditor, where there is evidence to raise a suspicion that the object of the conveyance was to elude other creditors who were pressing for judgments.

Nor, if there be a covenant for title, clear of encumbrances, where there are unextinguished ground-rents; and it is error to instruct the jury that the defect may be compensated by a deduction from the purchase money.

ERROR to the Common Pleas of Fayette county.

Renshaw brought covenant on articles for the purchase of land by Gans, who agreed to transfer judgments amounting to $1000, in payment, as soon as plaintiff would execute a deed, clear of all encumbrances : possession to be delivered on the 14th of the next month. He then proved an entry by the son of the defendant.

Also a tender of a deed with warranty against all encumbrances except quit-rents, at which time defendant objected that there were judgments and liens.

Defendant then showed a judgment against William Schroyer, security of Schroyer and Stinger, on the 4th of February, 1842, with a fi. fa., and sale of the property now in question, to a stranger ; also a conveyance by W. Schroyer, on the same day, to Renshaw, for $600 ; that $100 was paid in cash, and the residue in debts due by Schroyer ; he also showed the land was first held at $1200, but finally agreed to be sold at $1000.  There was evidence of his knowledge of the existence of the rent and a payment of it by him, after entry under the articles.  The court told the jury the defendant could not keep the land on account of

defect of title, without paying the purchase money: That fraud must be clearly proved, and there was no evidence to justify holding the conveyance by Schroyer to be fraudulent as to his creditors. If defendant was unwilling to complete the title, on account of defects, he was bound to give up possession, and rescind the contract. That, as to the quit-rents, a compensation could be made, unless the jury believed defendant was aware of their existence, and agreed to pay them at the time of the entry.

*Patterson*, for plaintiff, in error, contended there was some evidence of fraud to go to a jury; that defendant was not bound to do any act. The rule would be different, if he were proceeding to enforce the contract; but that in covenant on articles the plaintiff must prove performance, as in any other case ; aliter where the proceedings are ejectment to compel performance; and referred to 1 Watts & Serg. 68 ; 2 Watts, 227 ; 4 Watts & Serg. 316 ; 5 Serg. & Rawle, 311 ; 4 Watts, 153, 146 ; 2 Taunt. 145 ; 7 Serg. & Rawle, 62; 11 Serg. & Rawle, 246.

*Veech* and *Deford*, contrà, cited 4 Watts, 151, 153 ; 2 Watts, 483 ; 1 Watts, 236 ; 1 Rawle, 376; 7 Serg. & Rawle, 43; 7 Watts, 227 ; 4 Watts & Serg. 316 ; 11 Serg. & Rawle, 246.

GIBSON, C. J.—A purchaser is not bound to take a doubtful title ; and why should the defendant below have been bound to take the property under something more than a suspicion, that the conveyance from Schroyer to the plaintiff was tainted with fraud by the 13 Elizabeth ? Because, it is said, it was his duty, if the title was not such as he had bargained for, to give back the possession, and declare his determination to abandon the contract. And, for not having done so, he is to pay a sound price for an unsound title ! I am aware that the taking of possession may be a waiver of objection to the title, as was intimated in Colton *v.* Wilson, 3 P. Wms. 193, and directly decided in Calcraft *v.* Roebuck, 1 Ves. jun., 225 ; but it appears from Hearn *v.* Tomlin, Peake's Cases, 192, that the vendee may safely take possession at the time of the contract, as was done here, because he cannot be held to waive objections of which he was ignorant. But whose business was it to move towards a rescission of the contract ? Not the defendant's. He was at liberty to fold his arms and await the movement of the plaintiff, whose cue it was to take the next step towards an abandonment, or a completion, of the purchase. It was not for the defendant to know what title the plaintiff should be able to make, when he should come to tender the conveyance. The plaintiff's power to perform his part was best known to himself; and if he found the defect

in his title to be irreparable, what was he to do ?   Certainly not to bring an action for the purchase money, in order to force a rotten title on the purchaser of a good one, and this on the basis of his own default.   It would be his duty to apprise the vendee of his inability, restore whatever had been paid, and demand the possession.   In that case, equity would not enjoin him from proceeding on his legal title to get back the property, but not to compel the vendee to pay for what he did not get. Now, what was the evidence of defectiveness in this title ?   Schroyer sold the property to the plaintiff, his father-in-law, for $600 ; and in less than two months the plaintiff sold it to the defendant for $1000. This might be a circumstance, with others, to show that Schroyer had sold it greatly at an undervalue, which would be a very suspicious feature.   Schroyer himself testified that he was indebted to the plaintiff between four and five hundred dollars, or thereabouts ; and that the plaintiff was to satisfy an unascertained claim of Crozier, and pay $100 to Riffles, which, however, he paid to Schroyer himself.   The sale was made when judgments were about to be obtained against him ; and though an insolvent debtor may give such preferences to particular debtors as he may see proper, yet if the motive be not payment of his debts, but, in the language of the statute, " to *delay, hinder*, or defraud" particular creditors, the conveyance, though made on valuable consideration, is not *bonâ fide*, and therefore not saved by the proviso.   In Twyne's case, 3 Rep. 80, which is the leading one, the conveyance, as in this case, was in payment of a debt ; yet the retention of the goods by the debtor was held to be proof that the sale was not bonâ fide, but intended to delay the pursuing creditor, and the conveyance was consequently adjudged to be fraudulent.   Now, even if there had been no other circumstance in the case, the question whether the conveyance, in this instance, were bonâ fide, or to elude the creditors in close pursuit, ought to have been left to the jury instead of being put aside by the direction that the defendant could not detain the purchase money, unless he had offered to surrender the possession and abandon the contract ; and by an intimation that there was no evidence of fraud. But Schroyer himself testified that one sixth of the purchase money was paid to himself ; and if the purpose of the sale was known to the plaintiff, the conveyance was fraudulent by the statute, not only in part but in the whole.   But did not all this, combined with the fact that the property was bought in adversely on one of the judgments, cast such a doubt on the title as would excuse the defendant from receiving it, though the proof of collusion might turn out to be less than would entitle the sheriff's vendee to a verdict ?   In Sedgwick *v.* Hargrave, 2 Ves. sen. 59, the Master of the Rolls remarked that he had heard it

said, the title of a vendor must be like Cæsar's wife, not only pure but unsuspected; and though a vendee is not at liberty to speculate in probabilities, he is not bound to take the property encumbered with a lawsuit. I have seen no exception to this, but the anonymous case mentioned by Mr. Sugden, (Law of Vendors, chap. 7,) in which a vendee had refused to complete the purchase, because certain mines in it were under a common, and he would consequently be exposed to actions by the commoners for sinking the necessary shafts; but Lord Eldon compelled him to execute the contract, because he thought that a farthing would be as much as a jury would give in damages. Proceeding on the maxim de minimis, he evidently went further than any of his predecessors had gone; and much further than he afterwards went himself in Edwards *v.* McLeay, 2 Swanst. 287, in which even a contract executed was rescinded by him, and the purchase money restored, because the vendee had discovered, that a part of the premises had been taken from a common. Now, it is well-known that it requires a stronger case to induce a Chancellor to rescind a contract, than to withhold his assistance in causing it to be executed. If, then, the defendant, in this case, would be exposed to a lawsuit, with the least chance of losing it, he ought not to be held to the bargain.

It seems that the encumbrances, except the quit-rents, were discharged before tender of the conveyance and suit brought; but if the quit-rents could not be extinguished, the defendant was not bound to receive the title, unless he had agreed to take it with that particular encumbrance upon it. By the abstract of the articles before us, which, in the absence of fraud or mistake, must be taken to contain all the terms and conditions of the bargain, it appears that he was to have "a good and sufficient deed clear of all encumbrances;" and the testimony of Schroyer that he asked, shortly after the bargain, for the name of the person to whom he was to pay the rents, cannot alter the terms of the plaintiff's covenant, which certainly is not to be satisfied by the conveyance of a title irremediably encumbered. It is true that when a defect goes only to a part of the property, and that not the principal one, it may be compensated by a deduction from the purchase money; as in Stoddart *v.* Smith, 5 Binney, 335; but not where there is a canker in every part of it. The jury ought not, therefore, to have been instructed that they were at liberty to make the defendant take the property, with compensation for the quit-rents as the equivalent of an unencumbered title.

Judgment reversed, and venire de novo awarded.