## PRESCOTT G. HALE

*v.*

## AMOS W. CRAVENER.

*Filed at Ottawa May 16, 1889.*

1. VENDOR AND PURCHASER — *of the right of rescission— conditions upon which it rests.* Where one has obligated himself to convey to another a fee simple title to a tract of land by a warranty deed, before the vendor can rescind the contract for non-payment of the purchase money, he must not only tender to the purchaser a proper deed, but must also be able to convey a marketable title,—that is, a title not subject to such reasonable doubt as would create a just apprehension, or one that persons of reasonable prudence and intelligence would be willing to take and pay the fair value of the land.

2. A person holding land in trust under a will, made a contract for its sale, agreeing to make a warranty deed conveying the title in fee, and to furnish an abstract showing title and his power to sell and convey, tendered his deed after the filing of a bill by the heirs of his testator to set aside the will, and on refusal of the vendee to accept the deed and perform his part of the contract, the vendor filed his bill to rescind the sale. It was *held,* that as the vendor was not able to convey such a title as would satisfy the covenants of his agreement, he could not put the purchaser in default by the tender, and demanding performance before the termination of the suit to contest the will, which was his authority to convey. In such case, no prudent man would accept the deed subject to the doubt and uncertainty cast upon his right to convey by the filing of the bill to set aside the will.

3. A contract for the sale and conveyance of land provided that the vendor, on or before a day named, should make and deliver to the purchaser an abstract showing title and the right to convey, and that if the abstract failed to show a good title, then the cash payment which had been made should be returned to the purchaser and the contract determined : *Held,* that the clause relating to the rescission of the contract if the abstract did not show a good title, was for the benefit of the purchaser, and that the vendor could not take advantage of it to rescind the contract.

4. A party who seeks to determine his contract by availing himself of a condition therein contained providing for such determination, must bring himself strictly within the terms of such condition. Such a condition is not to be construed liberally, nor enlarged to include facts or circumstances not within its terms, but on the contrary, is, in

contracts for the sale of land, to be taken most strongly against the vendor.

5. A vendor can not make use of a condition to rescind his contract for the purpose of getting rid of a duty which attaches to him upon the rest of the contract.

6. A trustee under a will made a contract for the sale of a tract of land, and $500 was paid down. The vendor was, by a given time, to furnish the purchaser with an abstract showing title and his right to convey, and if he failed to show a good title, then the $500 was to be returned and the contract to terminate. Independently of this, the vendor covenanted that on performance by the purchaser he was to convey and assure to the latter a fee simple title. The vendor furnished an abstract, which on its face showed a good title and right to convey, but in fact there was a bill then pending, filed by the heirs of the testator, to set aside the will, not shown in the abstract: *Held,* that the vendor had not brought himself within the terms of the condition, although his abstract did not show any defect in his title, and that he could not rely on facts outside of the abstract as a ground of rescission, and further, that he was bound to convey by his covenant to that effect.

7. As a general rule, a contract can not be determined or rescinded by a party to it for non-performance of the other party, unless the former is in a position to demand a specific performance.

8. SAME—*waiver of prior performance.* Under a contract for the sale of land, the purchaser was to pay down $500, which was done. The vendor was then, by a certain time, to furnish the vendee an abstract showing a good title and power to convey such a title, and in ten days thereafter the purchaser was to pay $3500, and execute notes for the balance of the price, secured by mortgage, when the vendor obligated himself to convey the title in fee simple. It was also provided, that if the abstract, when furnished, failed to show such title, the $500 was to be returned and the contract to be determined. The abstract was furnished, showing a good title, but failed to show the pendency of a bill to set aside a will, under which the vendor claimed authority to sell and convey: *Held,* that each party was bound to perform in the order stated,—that the doing of the preceding act required the performance of the succeeding act by the other, and that one party might waive the doing of the preceding act by the other, and proceed to the performance of the succeeding act.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

This was a bill in equity, exhibited in the Superior Court of Cook county, by Prescott G. Hale, against Amos W. Cravener, to cancel and set aside as a cloud upon title a certain contract for the sale and conveyance of real estate. The Superior Court decreed in conformity with the prayer of the bill, but that decree was reversed on appeal to the Appellate Court for the First District, and the bill dismissed. The case is in this court by appeal from that judgment. A sufficient statement of the facts and points in issue will be found in the opinion of Mr. Justice MORAN, of the Appellate Court, which is as follows:

MORAN, P. J. : "On December 24, 1886, a contract in writing was entered into between appellant and appellee, as follows :

" 'Articles of agreement made this 24th day of December, A. D. 1886, between Amos W. Cravener, party of the first part, and Prescott G. Hale, as trustee under the last will and testament of Matilda Hale, deceased, party of the second part :

" 'Witnesseth, that if the party of the first part shall first make the payment and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the second part covenants and agrees, at the time hereinafter stated, to convey and assure to the said party of the first part, in fee simple, clear of all incumbrances whatever, by a good and sufficient warranty deed, the lot, piece or parcel of ground situate in the county of Cook, and State of Illinois, known and described as the north one-half ($\frac{1}{2}$) of the north-west one-quarter ($\frac{1}{4}$) of section twenty-three (23), township thirty-eight (38) north, range thirteen (13), east of the third principal meridian, except the east fifty (50) feet thereof, heretofore taken for a railroad right of way, and subject also to all streets, alleys and highways, and subject also to all taxes, assessments or other impositions legally levied or imposed upon said land subsequent to the year A. D. 1886. And said second party also agrees to furnish to said party, on or before January 10, 1887, (or as soon thereafter as the probate proceedings in the estate

of Matilda Hale, deceased, can be finally settled, and the abstract of title continued to show such settlement,) an abstract of title showing good title and power and authority to sell and convey in said second party as trustee, as aforesaid. And the said party of the first part hereby covenants and agrees to pay to the said party of the second part the sum of $24,000 in the manner following, to-wit: $500 cash down upon the signing of this agreement, and within ten days after said second party shall have furnished to said first party said abstract of title as above provided, said first party shall pay to said second party the further sum of $3500, and will make and deliver to him his four promissory notes, dated January 1, 1887, payable to the order of said second party at the Merchants' Loan and Trust Co., Chicago, Illinois,—one for $3000, payable April 1, 1887, one for $5000, payable one year after date, one for $6000, payable two years after date, and one for $6000, payable three years after date,—all with interest from date, at the rate of six per cent per annum, payable semi-annually, and at the same time will make, execute and deliver to said second party a mortgage on the premises above described, securing said four above mentioned promissory notes, and at the same time the said second party (the first party having performed his contract) will execute and deliver to said first party the warranty deed aforesaid. In case the abstract of title to be furnished as aforesaid, does not show a good title as herein stated, then the five hundred dollars ($500) this date paid hereon shall be returned to said first party and this contract determined.

" 'In case of a failure of said first party to make either of the payments or to perform any of the covenants on his part made and entered into hereby, then this contract shall, at the option of said second party, be forfeited and determined, and said second party shall retain all payments made, as his agreed and liquidated damages. It is hereby agreed that all the covenants and agreements herein contained shall extend to and be

obligatory upon the heirs, executors, administrators, successors and assigns of the respective parties hereto.

" 'In witness whereof said parties have hereunto set their hands and seals the day and year first above written.

AMOS W. CRAVENER, (seal.)

PRESCOTT G. HALE, (seal.)

Trustee under last will and testament of Matilda Hale, dec'd.'

"After the making of said contract, appellee proceeded to close up the proceedings in the probate court, and on or about January 6, 1887, his final account was approved by said court, and appellee was discharged as executor, and the estate closed. The abstract of the land mentioned in the contract was extended by appellee so as to show the final settlement of the estate, and delivered on January 14, 1887, and as soon as it was completed by the abstract makers, to the agent of appellant.

"On January 8, 1887, Martin C. Hale, Douglass R. Hale and Franklin M. Hale, three of the children and heirs-at-law of said Matilda Hale, deceased, filed their bill in chancery, in the circuit court of Cook county, against appellee and other heirs, alleging, among other things, that the said last will of said Matilda Hale, deceased, was not the last will of said deceased, and praying, among other things, that the same might be set aside. The abstract which was delivered to appellant by appellee on January 14, 1887, did not show the commencement of said suit in chancery, though it did show that the same parties who filed said bill, objected, on January 6, 1887, in the probate court, to the discharge of appellee as executor, on the ground, as they alleged, that said will was not the last will of said Matilda Hale. The abstract furnished to appellant was submitted by him to his solicitor for examination, and on January 20, 1887, said solicitor sent to appellant the following opinion of title :

" 'I have given the abstract of title to the land N. $\frac{1}{2}$ N. W. $\frac{1}{4}$, sec. 23, T. 38, 13, in Cook county, Illinois, a careful examination. It is my opinion that the title stood at death of Ma-

tilda Hale in her, and that she had good right to convey the same, or to devise the same by will; that under the will, if the same is in all respects valid, Prescott G. Hale, as her trustee, has full right to sell and convey the same, and that a deed from said Prescott G. Hale and her other heirs (none being under disability) will give a good title in any event.

Yours,                    H. T. HELM.'

"Neither Cravener nor his solicitor knew of the filing of the bill attacking the will till after the date of said opinion. Some negotiations took place between the parties with reference to some arrangement by which the chancery suit might be disposed of and the title passed, but nothing was accomplished, and on March 9, Cravener filed a petition to be made a party defendant in said suit in the circuit court, and set out in his petition a copy of his contract for the purchase of the land in controversy, and an order was made by the court, making said Cravener a co-defendant, with leave to answer.

"Cravener did not make the payment of money required by the contract to be made within ten days of the delivery to him of the abstract, and did not make and deliver the promissory notes or mortgage provided for in the contract. About May 7, 1887, Hale was offered $28,500 for the property in controversy, and through his attorney answered that he could not sell till he had gotten rid of the contract with Cravener, which he proposed to do. On May 27, 1887, Hale tendered to Cravener a deed of the premises described in the contract, and which was in form according to the contract, and demanded that Cravener should pay the money then due under the contract, and should execute and deliver the notes and mortgage according to the terms of the contract; but appellant refused to accept said deed and to make the payments or execute the notes, whereupon appellee tendered to appellant $512.75,— being the $500 which appellant paid on the contract, with interest thereon from December 24, 1886, when it was paid;

but appellant refused to receive said tender or to accept said money, and thereupon appellee declared the said contract determined, and demanded from appellant the abstract of title. The next day appellant went to the office of appellee's solicitor, and there tendered to appellee the money due under the contract, and offered to receive the deed and execute the mortgage and notes, provided appellee would procure said chancery suit to be dismissed; but appellee declined, for the reason that he could not get the suit dismissed without the payment of a large amount of money.

"On June 4, 1887, the bill in this suit was filed, showing that appellant refused to discharge said contract, and that by his filing a copy thereof in said suit in the circuit court it had become a cloud on the title of appellee, and that appellant claims a conveyance of said premises, but insists that said chancery suit should be settled or caused by appellee to be dismissed, and praying that said contract be declared null and void, and be removed as a cloud on appellee's title, and be ordered delivered up and canceled. On the hearing, the facts above set out appeared from the pleadings and proofs of the respective parties, and upon said facts the court entered a decree granting the relief prayed for in appellee's bill.

"The correctness of the decree depends upon the question whether, under the terms of the contract and the facts stated, appellee had a legal right to rescind the contract and tender back the deposit paid by appellant. The terms of the contract obligated appellee to convey and assure to appellant a fee simple title to the premises described, and, to discharge such obligation, appellee was bound to convey a marketable title,—that is, a title not subject to such reasonable doubt as would create a just apprehension—one that would be regarded as merchantable, so that persons of reasonable prudence and intelligence would be willing to take it, and pay the fair value of the land. *Parker* v. *Porter*, 11 Bradw. 602; *Brown* v. *Cannon*, 5 Gilm. 174; *Snyder et al.* v. *Spaulding*, 57 Ill. 480.

"It is very plain that the title to the land mentioned in the contract was not in the merchantable condition at the time appellee tendered the deed to appellant and demanded the performance of the contract, and appellee, not being able to convey such a title as would satisfy the covenants in his agreement, could not put appellant in default by tendering the deed and demanding performance of the contract. Appellant had not agreed to accept such a title as was offered to him, and no prudent man would do so while subject to the uncertainty cast upon it by the filing of the bill. Indeed, it is frankly admitted by counsel for appellee, in his brief filed in this court, that appellant could not be compelled to accept any other than a good title, and he states that appellee has never insisted that appellant was bound to accept the title, in view of the litigation that was developed after the contract was made. If appellant was not put in default by the tender of the deed, then appellee had no right to rescind the contract on the ground that appellant refused to perform it.

"It is contended by appellee that the conditions in the contract authorized him to rescind if the title was not found good. The condition is, 'In case the abstract of title to be furnished as aforesaid does not show a good title, as herein stated, then the $500 this date paid thereon shall be returned to said first party, and this contract determined.' Now, it is obvious that any party who seeks to determine his contract by availing himself of a condition therein contained providing for such determination, must bring himself strictly within the terms of such condition. The condition is not to be liberally construed, nor enlarged to include facts or circumstances not within its terms, but, on the contrary, is, in contracts for the sale of lands, to be taken most strongly against the vendor.

"In *Greaves* v. *Wilson*, 25 Beav. 290, which was a bill for specific performance in a case in which the vendor sought to determine a contract under a condition contained in it, the court said: 'The mode in which these conditions must be con-

strued is explained in all the cases upon the subject. They must be construed, like every other instrument, most strictly against the person who frames them, because the vendor alone can be the sole judge of the necessity or propriety of making such conditions before he offers the property for sale. In addition to that, it is to be borne in mind that a person who offers property for sale becomes subject to certain duties, in the character of vendor, and that he does not get rid of them by special conditions of sale.' It is further said in the same case, 'that a vendor can not make use of a condition to rescind a contract, for the purpose of getting rid of the duty which attaches to him upon the rest of the contract, of making out a title.' And to this effect is *Page* v. *Adams*, 4 Beav. 269.

"In *In re Jackson*, 14 L. R. (Ch. Div.) 851, the rule laid down in *Greaves* v. *Wilson*, *supra*, was followed in a case where the condition provided, among other things, that objections should be made within fourteen days from the delivery of the abstract, and if none were made within the time, the title was to be deemed accepted, and if the purchaser should insist on any objection which the vendor should be unable, or, on the ground of expense, should decline to remove, then the vendor should be at liberty to rescind the contract by notice, unless the purchaser should, by notice, withdraw the objection, and upon rescission the purchaser should receive back his deposit. The abstract delivered did not show the real state of the title, and after the title as shown by the abstract was approved, it was discovered that there was an equitable mortgage on the leasehold, of which the vendor was ignorant. The purchaser insisted that this should be discharged, and the vendor gave notice that he was unable and unwilling, on the ground of expense, to comply, and that he would rescind the contract unless the objection was withdrawn. The purchaser refused to admit the rescission, and applied to the court, and it was held that there could be no rescission, as the objection did not come within the condition, not having been shown by the

abstract, and that the charge upon the property should be cleared off by the vendor. See, also, *Roberts* v. *Wyatt*, 2 Taunt. 268, where a condition in a contract of sale by which the contract was to be void in case the vendor could not deduce a good title, is construed by Lord MANSFIELD to give an option, not to the vendor, but to the purchaser, to avoid the contract for failure to deduce such good title.

"Now, in view of this rule of strict construction as against the vendor, as illustrated by these cases, has appellee brought himself within the condition which he seeks to avail himself of to rescind this contract? He agreed to furnish to appellant an abstract of title showing good title, and power and authority to sell and convey, in himself, and provided a condition that in case the abstract of title to be furnished did not show a good title, the deposit should be returned, and the contract determined. The abstract which he furnished showed a good title, therefore it is clear that if nothing further had arisen to affect the title, appellee would have no right to rescind the contract under the condition. Facts existed, not shown on the abstract furnished by appellee, which render the title not good; but the existence of such facts can not avail appellee as a basis of rescission, for the condition only authorizes rescission 'in case the abstract to be furnished as aforesaid does not show a good title.' It will not do to suggest that the abstract, if perfect when delivered to appellant, would have failed to show the title good. Appellee took upon himself the duty of furnishing the abstract, and he furnished the one delivered, as a compliance with his undertaking, and he can not allege his own error or default in order to bring himself within the condition and accomplish a rescission.

"This case is not like the cases of *Hoyt* v. *Tuxbury et al.* 70 Ill. 332, and *Brizzolara et al.* v. *Mosher et al.* 71 id. 41, cited and relied on by counsel for appellee. In the first of those cases the provision was, that payments were to be made in a certain time 'after the title had been examined and found good.' In

27—128 ILL.

the second case the clause in the agreement was, 'should the title to the property not prove good, then the payment to be refunded.' So in *Manson* v. *Fletcher*, L. R. (10 Eq.) 212, the condition was very broad, being, in effect, if any objection to the title be persisted in, the vendor shall be at liberty to rescind the contract on returning to the purchaser his deposit. The difference between the conditions and provisions of the contracts in those cases, and that in the case under consideration, is too obvious to require specification. Such cases establish no rule for the construction of this condition.

"Our conclusion is, that appellee could not rescind the contract under its terms, as he did not bring himself within the condition authorizing a rescission, and he could not rescind for non-performance by the appellant, because appellee was not himself in a condition to perform. As a general thing, a contract can not be determined or rescinded by a party to it unless he is in a position to demand a specific performance. *Baker* v. *Bishop Hill Colony*, 45 Ill. 264; *Howe* v. *Hutchison*, 105 id. 501; *Johnson* v. *Pollock*, 58 id. 181.

"The decree of the court annulling the contract and directing its cancellation can not be sustained, and the same will be reversed, with directions to the Superior Court to dismiss appellee's bill."

Mr. JAMES S. MURRAY, for the appellant:

The title is conceded to be good if the will is valid. Can the appellee hold the contract in abeyance until this litigation concerning the will is determined? We contend that he has no such right under the contract, and that upon the declaration of the appellee not to accept the title, then the appellant had a right to refund the $500 and declare the contract determined.

The appellant has never insisted that appellee was bound to accept the title, in view of litigation that was developed after the contract was made. Nor has he attempted to forfeit

anything. He merely claims what the contract clearly provided,—that if the title was not found to be good, neither party should be embarrassed, but that each should be placed *in statu quo.* This intention is most clearly and positively expressed. The provision is: "In case the abstract of title to be furnished as aforesaid does not show a good title, as herein stated, then the five hundred dollars ($500) this date paid thereon, shall be returned to said first party, and this contract determined." *Brizzolara* v. *Mosher,* 71 Ill. 41; *Hoyt* v. *Tuxbury,* 70 id. 332; Fry on Specific Performance, sec. 732; *Fitch* v. *Willard,* 73 Ill. 107; *Greaves* v. *Wilson,* 25 Beav. 290; *Mawson* v. *Fletcher,* L. R. (10 Eq.) 212.

Messrs. H. T. & L. HELM, for the appellee:

Under a contract calling for a "good title," the vendee is entitled to a marketable title. *Parker* v. *Porter,* 11 Bradw. 602; *Brown* v. *Cannon,* 5 Gilm. 174; *Snyder* v. *Spaulding,* 57 Ill. 480; 1 Sugden on Vendors, (8th Am. ed.) 336.

The vendee is not bound to accept a deed and rely on the covenants of warranty. His bond calls for the title, not covenants. *Thompson* v. *Shoemaker,* 68 Ill. 256; *Tyler* v. *Young,* 2 Scam. 444; 22 Ill. 127; 26 id. 396; *Baker* v. *Bishop Hill Colony,* 45 id. 264; *Vining* v. *Leeman,* id. 248; *Johnson* v. *Pollock,* 58 id. 181; 58 id. 182; *Eames* v. *Germania Turnverein,* 8 Bradw. 672; *Denby* v. *Graff,* 10 id. 195.

The furnishing the vendee with a truthful abstract of title was a condition precedent. *Howe* v. *Hutchinson,* 105 Ill. 501.

The vendor can not claim a forfeiture unless he is in a position to demand a specific performance. Such is the express statement of many adjudications. *Baker* v. *Bishop Hill Colony,* 45 Ill. 264; *Vining* v. *Leeman,* id. 248; *Wallace* v. *McLaughlin,* 57 id. 53; *Johnson* v. *Pollock,* 58 id. 182; *Brown* v. *Cannon,* 5 Gilm. 174; *Snyder* v. *Spaulding,* 57 Ill. 486; *Howe* v. *Hutchinson,* 105 id. 501.

The demand made by appellant upon appellee, on the 27th of May, goes for naught; and appellee was under no obligation to make tender or offer of payment until the vendor was in condition to give a good title. *Denby* v. *Graff*, 10 Bradw. 195, and cases cited.

This contract is to be construed most strongly against the vendor. The vendor expressly agreed to convey the land, and to furnish the vendee with an abstract showing a good title. He shall not be allowed to say, because he has failed to keep either of these covenants, that this fact gives him the right to say the contract has no binding force. It could not have been intended that this contract was only to bind the vendee. There should be some mutuality in its provisions. This clause should not be regarded as an open link, which the vendor could use at his pleasure to annul the binding force of his agreements, whenever, from choice or necessity, he should find himself in default. It shall not be said that when a party agrees to do a certain thing, and in case of default or failure the contract shall have no binding force, such obligor can release himself from the binding force of his own obligation by simply failing to perform his agreement. *Mason* v. *Caldwell*, 5 Gilm. 196; *Chrisman* v. *Miller*, 21 Ill. 235; *Howe* v. *Hutchison*, 105 id. 504; *Canfield* v. *Westcott*, 5 Cow. 207.

This clause was inserted for the peculiar benefit of the vendee, and not for the purpose of enabling the vendor to release himself, and this case is clearly distinguishable from *Brizzolara* v. *Mosher*, 71 Ill. 41.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We concur in the views expressed in the foregoing opinion of Mr. Justice MORAN, both upon the law and the facts.

The acts required to be done by the respective parties, after the signing of the contract, are to be done in this order: First, Cravener is to pay $500 in cash, which was done;

second, Hale is to furnish to Cravener, on or before January 10, 1887, or as soon thereafter as the probate proceedings in the estate of Matilda Hale, deceased, can be finally settled and the abstract of title continued to show such settlement, an abstract of title, showing good title, and power and authority to sell and convey; third, Cravener is to pay Hale, ten days after said abstract shall have been furnished, $3500, and execute the notes and mortgage stipulated, for the balance of the purchase money; fourth, Hale is to convey the land described to Cravener, in fee simple, free and clear of all incumbrances whatever, by a good and sufficient warranty deed.

Each party, it will thus be seen, is obligated, absolutely, to perform his undertaking in the order thus stated. There is no stipulation whereby either shall be released therefrom without the consent of the other. The doing of the preceding act by the one, necessitates the doing of the succeeding act by the other. Of course, either party may waive (because he may give away what he pleases) the doing of the preceding act by the other, and proceed to the performance of the succeeding act; but unless he shall do so, this order of sequence must be observed.

The stipulation that in case the abstract of title to be furnished does not show a good title, the $500 paid at the date of the execution of the contract shall be returned and the contract determined, can not be taken advantage of by Hale, because, first, it is manifestly designed for the benefit of Cravener, only. Hale, it is to be presumed, knows the title he has, while Cravener does not; and since it can not affect Hale adversely if Cravener shall be content to take a bad title, he may elect to take any title which the abstract discloses. Second, Hale's undertaking to convey is entirely independent of his ability to furnish the required abstract, and is in no respect conditional.

Cravener does not now have an option to take the title of Hale, or not, at his election. He had an option to accept the

title offered, or to reject it, because of the pendency of the suit, unknown to him and not disclosed by the abstract, to set aside the will, when he learned the pendency of that suit; but that he waived, by an agreement, tacitly, at least, made with Hale, to postpone the further execution of the contract until the termination of that suit. If that suit results in sustaining the will, he is obliged to accept the title, and he can exercise no option whatever, and the contract is not, therefore, unilateral in this respect.

The judgment is affirmed. *Judgment affirmed.*