SILFVAST, RESPONDENT, *v.* ASPLUND ET AL., APPELLANTS.

(No. 7,005.)

(Submitted February 27, 1933. Decided March 22, 1933.)

[20 Pac. (2d) 631.]

586

*Mr. M. H. Parker, Mr. A. G. Shone* and *Mr. H. L. Maury*, for Appellants, submitted an original and a reply brief; *Mr. Maury* argued the cause orally.

*Mr. H. A. Tyvand* and *Mr. W. D. Kyle*, for Respondent, submitted a brief; *Mr. Kyle* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by Ester Asplund and John Sundberg, as administrator of the estate of O. W. Asplund, deceased, from a judgment quieting title in the plaintiff, Aino Silfvast, to certain land in Jefferson county, which judgment was entered against O. W. Asplund and Ester Asplund during the lifetime of the former.

On May 31, 1928, Mrs. Aino Lundgren, now Silfvast, desired to dispose of a dairy farm, formerly operated by her husband, Armas Lundgren, then deceased. O. W. Asplund and his wife Ester were seeking such a place; the parties were brought together and a contract for the sale and purchase of the land, equipment, livestock and milk route in the city of Butte, near which the land was situated, although in Jefferson county, was entered into. The purchase price fixed was $20,000; a down payment of $3,500 was made, and the purchasers were given immediate possession. The contract provided that the balance of the purchase price should be paid in monthly payments of $200, with accrued interest on the unpaid balance up to July 15, 1930, after which the payment on principal should be $300 per month, but further provided that, if possible, the plaintiff should secure a $5,000 loan from the Federal Loan Bank, which amount would then be credited on the purchase price, and the purchasers would assume the loan and obligation thereof. The application for the loan had already been made.

The contract provides that the purchasers shall have imme-

diate possession of both real and personal property and use the same, "but the title * * * shall be and remain in" the vendor until the full purchase price is paid. The contract bound the vendor to execute "a good and sufficient grant deed" and a bill of sale, and place the instruments in escrow in a Butte bank, to be delivered on completion of the payments, with an abstract of title showing that the vendor "has clear title to the same on the date of the delivery of said deed and bill of sale, subject to * * * right of way of the Montana Power Company." The contract recites: "Time is hereby expressly agreed to be of the essence of this agreement."

The deed and bill of sale were executed and placed in escrow. The application for the loan was evidently rejected. The purchasers made all payments up to and including November 15, 1929, and early in that year they made application to the Federal Farm Loan Bank for a loan on the property of $8,000, which application was approved for $6,000, subject to approval of the title. The title was thereafter declared "unsatisfactory," for the reason that, in the estate of Armas Lundgren, this plaintiff, as administratrix, caused a sale of the premises to be had for the purpose of paying the debts of the estate, and thereupon purchased the premises from the purchaser at the sale, on the day following the sale; this was declared to be an indirect purchase by the administratrix contrary to law. It was further objected that the records showed that a mortgage had been foreclosed on a portion of the property against the Unique Dairy Company, a corporation of which plaintiff was secretary, and, on foreclosure sale, the mortgagee bid in the property and, before sheriff's deed was issued to it, conveyed the premises to this plaintiff; this, it was objected, might be held to constitute a redemption rather than a purchase. The application was therefore rejected.

The challenge to the title seems to have been accepted by the vendor as sufficient excuse for failure to make payments under the contract from November 15, 1929, to June, 1930, for no intimation was given that plaintiff vendor considered the pur-

chasers in default; but, recognizing the validity of the contract, in May, 1930, plaintiff instituted this action against the Unique Dairy Company and all "unknown" persons claiming, or who might claim, some interest in the premises, and in the complaint alleged that the plaintiff is "in possession, through Oscar W. Asplund and Ester Asplund, vendees, under an escrow agreement" of the property described. Counsel for plaintiff earnestly assure us that the action was instituted, not against, but for the benefit of, these defendants.

The Unique Dairy Company defaulted, but the patentees of a portion of the land filed answer alleging that they are the owners of all ores or minerals beneath the surface of the land, but have granted to the plaintiff an option to purchase their rights at any time before July 17, 1932. This action was commenced May 15, 1930; the option to purchase the mineral rights was not secured until the July following.

Although, on the institution of the action, plaintiff was not insisting on the payment of installments past due, on June 25, 1930, she served formal notice on the vendees of their delinquency and demanded payment of the full amount then due, within fifteen days, under penalty, upon failure so to do, of having the entire balance due under the contract declared immediately payable, and, if not paid, declared that plaintiff would repossess the property, recall the papers in escrow, and cancel the contract. On July 14, 1930, plaintiff served upon defendants notice that unless the entire balance of $13,100 was paid within fifteen days, all their rights would be declared forfeited, and plaintiff would exercise her right under the contract to retake the property, and demand the return of the deed and bill of sale from the bank.

On receipt of this notice, the time for answer in the action to quiet title being about to expire, the vendees, these defendants, filed an answer and cross-complaint, setting up the contract and alleging its breach by plaintiff in failing at the outset to deposit in escrow a deed conveying marketable title to the premises; alleging the Blake-Page ownership of the mineral rights in the premises; and that, by reason of the manner

in which the title was conveyed from the Lundgren estate, the father and mother of Lundgren own a half interest in the land described.''

It is further alleged in the cross-complaint that plaintiff has never furnished defendants or the bank an abstract showing good title in her, and that such abstract cannot be furnished at any time; that, at the time the parties contracted, plaintiff and her attorney assured defendants that the title was good, and, having confidence in the attorney, defendants believed the representation to their damage; and that all payments made were made under a mistake as to the facts. Defendants demand judgment of rescission and return to them of all payments made, with certain damages. By reply the plaintiff denies the affirmative allegations of the answer.

On a trial to the court the foregoing facts were brought out, and it was further shown that the Mountain States Telephone & Telegraph Company had a right of way for a pole line across the premises, without any showing as to whether or not such a line had ever been constructed.

On the showing made the court found that the contract was entered into as alleged, and required the plaintiff to convey ''good and perfect'' title, but only when the terms of the contract were fully complied with; that plaintiff had performed her part of the contract, but that defendants defaulted by failing to make any payments after November 15, 1929; and that plaintiff gave them the opportunity to be relieved from their default by subsequent payment, but that they refused the offer. The court further found that the action was commenced for the benefit of defendants to enable them to secure a loan and not in disaffirmance of their rights under the contract; that no fraud or deceit was practiced upon them; that they discontinued the milk route but remained in possession of all of the property covered by the contract.

The court declared that certain parties known to the plaintiff should have been made defendants specifically, including the telephone company, the Montana Power Company, and

"possibly" the mother and father of Armas Lundgren, deceased.

On these findings the court quieted title as to all persons except Blake and Page, and the known persons above named, and specifically as to these defendants, declaring that, as against them, the plaintiff is entitled to the immediate possession of all of the property described in the contract. The judgment and decree followed.

Counsel for the defendants contend that the court erred in rendering its decree in favor of the plaintiff, as defendants were justified in suspending payments because plaintiff breached the contract at its inception by then failing to deposit in escrow a deed conveying marketable title. This theory is based upon the wording of the contract providing that the title "shall be and remain" in the vendor until the payments shall have been made, and that "time * * * is * * * of the essence of this agreement."

We cannot agree with this interpretation of the agreement; it is but the usual contract of purchase and for sale of real estate. The first-quoted clause merely evidences the intention of the parties that title shall not pass until the payments are completed. We agree with counsel that "when time is made of the essence of the contract it works both ways," but this fact does not aid the defendants in their attempt to reverse the judgment.

The mutuality of the agreement that time shall be of the essence of the contract requires that either party to the contract shall perform his obligations at the time specified, or within the time specified, in order to entitle him to require performance from the other party. It does not mean that delay will not give rise to a right of action against him. A breach of any promise in the contract, whether vital or not, will do that; nor does the phrase mean merely that time is a material matter, but that it is so material that exact compliance with the terms of the contract in this respect is essential to the right to require counter performance. (2 Williston on

Contracts, 1621; *Mazzotta* v. *Bornstein,* 104 Conn. 430, 133 Atl. 677.)

On the contention that alleged encumbrances upon the property constituted a breach of the contract at inception, counsel for defendants rely upon the statement that ''it is an implied term of an executory contract for the sale of realty that the title is good'' (1 Page on Contracts, 648), but a reading of the entire text, and the many cases cited in support of it, discloses that this declaration is made with reference to contracts for the sale and purchase of realty as a single transaction, and do not involve deferred payments, as where the proposing vendee is ready to pay over the purchase price, but the proposing vendor cannot pass a marketable title, at the time the contract is to be executed. (*Vaughan* v. *Butterfield,* 85 Ark. 289, 107 S. W. 993, 122 Am. St. Rep. 31; *Cowdery* v. *Greenlee,* 126 Ga. 786, 55 S. E. 918, 8 L. R. A. (n. s.) 137; *Bolton* v. *Huling,* 195 Ill. 384, 63 N. E. 140.) The statement, therefore, is in harmony with the rule that the sufficiency of the title is to be determined as of the date fixed for the performance of the contract. (Maupin on Marketable Title to Real Estate, 3d ed., 754.)

Here the date of performance by the vendor is the date of final payment by the vendee. Regardless of the date of execution, the effective date of the transfer of title by deed in escrow is the date of delivery by the depositary (sec. 6846, Rev. Codes 1921; *Tyler* v. *Tyler,* 50 Mont. 65, 144 Pac. 1090); consequently the vendor is only required to have marketable title at the time he is required to cause delivery of the deed to the vendee on the latter's completion of the payments required by the contract.

Consequently, a person may, in good faith, enter into a valid contract to convey at a future time property to which he has no title, or as to which the title is defective, or on which there is an encumbrance, as he may be able to convey good title when the time for passing title arrives. (*Bozdech* v. *Montana Ranches Co.,* 67 Mont. 366, 216 Pac. 319; *Wilson* v. *Corcoran,* 73 Mont. 529, 237 Pac. 521; *Hollensteiner* v. *Anderson,*

78 Mont. 122, 252 Pac. 796; *Friedrichsen* v. *Cobb,* 84 Mont. 238, 275 Pac. 267.)

The contract under consideration clearly expresses the intention of the parties to make the above rule of law a part of the contract, when it declares that "when the said deed and bill of sale are. delivered * * * the first party is to deliver * * * an abstract * * * showing clear title * * * on the date of the delivery of said deed."

The fact that the title was declared unsatisfactory by a proposing encumbrancer did not, therefore, justify the defendants in suspending payment of the intermediate monthly payments required by the terms of the contract, for the covenant to make these payments is independent of the covenant to convey title. The rule of interpretation of such contracts being that, if title is to be conveyed on payment of the first installment, the covenant to pay that installment and to convey are dependent (*Bailey* v. *Lay,* 18 Colo. 405, 33 Pac. 407), but if the covenant to convey is to convey on payment of the last installment, the covenants to make all payments up to the final installment are independent of the covenant to convey (*Sheeren* v. *Moses,* 84 Ill. 448; *Battey* v. *Beebe,* 22 Kan. 81; *Manning* v. *Brown,* 10 Me. 49; *Powell* v. *Stowers,* 47 Miss. 577; *Biddle* v. *Coryell,* 18 N. J. L. 377, 38 Am. Dec. 521), but the payment of the last installment and the delivery of the deed are dependent and concurrent acts. (*Norris* v. *Letchworth,* 140 Mo. App. 19, 124 S. W. 559; *Glenn* v. *Rossler,* 156 N. Y. 161, 50 N. E. 785; *Christy* v. *Baiocchi,* 53 Wash. 644, 102 Pac. 752.)

Compliance with the terms of the contract by the payment of the installments due prior to the final installment, with either constructive or actual knowledge of the existence of clouds on the title to the property, is not a waiver of the requirement to convey marketable title, and the making of such payments, after learning of the alleged defects in title, would not have affected the defendants' rights. (*Key* v. *Vidovich,* 58 Cal. App. 710, 209 Pac. 375; *Craig* v. *White,* 187 Cal. 489, 202 Pac. 648.)

594

Had this suit, therefore, been for the rescission of the con-tract on the ground that defendants breached their contract by failure to pay the intermediate installments, the judgment of the court would have been amply justified. It will be remembered, however, that this suit was instituted when defendants had been in default for months, and that it was then commenced for the "benefit of" the purchasers who were recognized as being in good standing under the contract, thus waiving the defaults up to that time. (*Suburban Homes* v. *North*, 50 Mont. 108, 145 Pac. 2, Ann. Cas. 1917C, 81.) This temporary waiver of the defaults, or indulgence extended to the purchasers (manifestly on account of the doubtful condition of the title), did not constitute a waiver of the provision that time is of the essence of the contract, and, notwithstanding such indulgence for an indefinite time, the vendor still had the right at any time to put an end to such indulgence by giving the notice for which provision is made in the contract. (*Huffine* v. *Lincoln*, 87 Mont. 267, 287 Pac. 629.)

For some undisclosed reason, before plaintiff was in a position to have the default of unknown claimants entered, the plaintiff gave to the defendants the notices heretofore mentioned, and which were necessary under the contract in order to cancel the contract.

The provision for notice contained in the contract is, in effect, that on default in payment of any intermediate installment, the vendor shall notify the vendees that, unless payment is made within fifteen days, the total balance due under the contract shall become immediately due and payable, and, if payment is not made within time, a second notice shall be given that, unless the full amount is paid within fifteen days, the vendor will take possession of the premises and personal property and withdraw the deed and bill of sale from the bank, and all moneys theretofore paid "shall be and remain the property" of the vendor as rent "and as further consideration for this agreement." This clause is clearly an acceleration clause similar to that contained in mortgages. The effect of giving the notices was to compel the purchasers

to pay the full amount of $13,100 as the final payment on the contract price, and to render the covenant to make that final payment and the covenant to convey a marketable title "dependent and concurrent acts." In other words, under such a contract as we have before us, the mere failure of the purchasers to make the deferred payments did not *ipso facto* entail a forfeiture of their rights under the contract, and, when the vendor elected to give the notice which would effect that result, the forfeiture could only be declared if, at the time she demanded final payment, she could convey marketable title. (*Higinbotham* v. *Frock*, 48 Or. 129, 83 Pac. 536, 120 Am. St. Rep. 798; *Norris* v. *Letchworth*, 167 Mo. App. 553, 152 S. W. 421; *Provident Loan Trust Co.* v. *McIntosh*, 68 Kan. 452, 75 Pac. 498, 1 Ann. Cas. 106; *Calvert* v. *Joseph*, 32 N. M. 384, 257 Pac. 680.)

Having voluntarily advanced the date for the final closing of the deal, the plaintiff in effect declared that, if the vendees paid the full amount remaining due on the purchase price on or before July 29, 1930, she would, at the moment of payment, convey marketable title to the property by the delivery of the deed from the depositary to the purchasers, for "the sufficiency of the title offered by the vendor is to be determined as of the date fixed for the performance of the contract" (Maupin on Marketable Title to Real Estate, 3d ed., 754), and, as above stated, the covenant to make *final* payment and the covenant to convey title were "dependent and concurrent acts."

Was the plaintiff in a position to comply with the covenant to convey on July 29, 1930? It will be remembered that her action to quiet title as against all unknown persons was then pending, and the time for appearance had not expired. Further, when in September, 1931, the court finally disposed of the case, it quieted title to the mineral rights in the claimants Blake and Page and against the plaintiff, and declared that there were certain persons known to the plaintiff at the time the suit was commenced, "who may have some claim or interest in the land," and who should have been made parties; these

were named as the Mountain States Telephone & Telegraph Company, Montana Power Company, and "possibly the father and mother of Armas Lundgren." As to these persons the court refused to quiet title in plaintiff.

It is said that the vendor, by instituting suit against strangers to quiet the title, "admits that his title is not such as the purchaser can be required to take." (Maupin, above.) The purchaser cannot be required to take a doubtful title (*Bozdech* v. *Montana Ranches Co.*, above), and title is declared "doubtful" when, among other things, "the probability of litigation ensuing against the purchaser in respect of the matter in doubt is considerable," as the court "will not compel the purchaser to buy a lawsuit," and "where there has been a decision by the court * * * adverse to the title, * * * though the court thinks that decision wrong." (Maupin, above, 774, and cases cited.) Plaintiff's covenant was that, on the day set for final performance, she would furnish an abstract showing "clear title" to the real property, which covenant required her to convey a "marketable title." (*Williams* v. *Hefner,* 89 Mont. 361, 297 Pac. 492.)

The term "marketable title" is difficult of definition; it is discussed at length in the above-cited work. The most practicable test is as to whether the title is such that a third person may reasonably raise a question after the time the contract would have been completed. If the condition of the title warrants such attack, the purchaser may reject the title as "unmarketable." (*McNutt* v. *Nellans,* 82 Kan. 424, 108 Pac. 834; *Freetly* v. *Barnhart,* 51 Pa. 279.) Another statement of the text-writers which is applicable to the present case is that "if the counsel of a loan company will not certify to the title to a tract of land, by reason of which the company declines to take a mortgage on the property, the title is not marketable." (3 Devlin on Real Estate, 3d ed., p. 2744, citing *Miller* v. *Bronson,* 26 R. I. 62, 58 Atl. 257.) This statement, however, is hardly in accord with the declaration of the same author, that the question of the marketability of the title is a question of law for the court, and that advice of counsel will not pro-

tect the purchaser in refusing to perform, except under prescribed conditions. (3 Devlin, above, secs. 1527, 1528.)

In the initially friendly suit to quiet title "for the benefit ■ of" the defendants, but which resulted in a decree forfeiting all their rights and moneys paid on the contract price, the court was in no position to determine whether or not the right of way for the telephone line constituted an encumbrance, and consequently a breach of the covenant to convey marketable title, for the record does not disclose that the pole line was constructed. If the examination of the premises by the proposing purchasers disclosed the existence of the right of way by reason of the line in place, they would be presumed to have accepted the contract with that slight burden on the land; but, if the line had not been constructed, the undisclosed burden would be sufficient to warrant the refusal of the title. (*Bozdech* v. *Montana Ranches Co.*, above; *Williams* v. *Hefner*, above; *Ferguson* v. *Edgar*, 178 Cal. 17, 171 Pac. 1061; *Wingard* v. *Copeland*, 64 Wash. 214, 116 Pac. 670.)

We need not determine the claim that, in the Lundgren estate matter, the sale by the plaintiff, as administratrix, one day, and the purchase by her as an individual the next, was, in effect, a prohibited sale to herself in her trust capacity.

As to the reservation of the minerals, plaintiff contends that ■ the reservation, though made by the patentees of the land on transfer thereof to her predecessors, her husband and another, does not constitute an encumbrance, in view of the statement made in the opinion of this court in *Ogg* v. *Herman*, 71 Mont. 10, 227 Pac. 476, 478, that "since the reservations in the patent do not of themselves constitute encumbrances on the lots, we conclude that plaintiff fulfilled the terms of his contract so far as disclosed by the record." As noted, that statement was made with reference to reservations in the "patent." In *Nacey* v. *Cheney*, 67 Mont. 56, 214 Pac. 647, this court held that the mineral reservations in the patent did constitute an encumbrance on the land, basing the holding on decisions with respect to deeds; but in the *Ogg Case*, without mention of the former holding, and on the authority of *Pacific*

*Coast M. & M. Co.* v. *Spargo,* (C. C.) 16 Fed. 348, this court held that such reservation in a government patent was effective only with respect to rights acquired prior to the issuance of the patent, and that the patentee took the entire title, as against subsequently acquired rights, in spite of the formal reservation; hence the statement on which plaintiff relies.

When, however, a reservation of minerals is found in a deed, the reservation constitutes an encumbrance which entitles the proposing purchaser to refuse to accept the property, for "a court of equity could not compel the defendants to take and pay for land thus encumbered without making for the parties a contract which they did not choose to make for themselves." (*Adams* v. *Henderson,* 168 U. S. 573, 18 Sup. Ct. Rep. 179, 182, 42 L. Ed. 584.) Counsel for plaintiff assert that this opinion "is without application to the case at bar," as there is therein no discussion of knowledge as to the existence of the reservation at the time the contract was made. The most that the record shows is that the defendants had constructive notice by reason of the recorded deed; but, even had they had actual notice, the rule would be the same. (See *Ayers* v. *Buswell,* 73 Mont. 518, 238 Pac. 591, and cases cited.)

The mineral reservation alone was sufficient to warrant the ▇▇▇ vendees in refusing to complete the contract, unless the fact that just prior to the date set for performance the plaintiff secured an option to purchase the property of Blake and Page cured the defect in the title.

The option, of course, placed it within the vendor's power to correct the defect in the title, but that fact alone did not aid the vendor at the time she had voluntarily fixed the time for performance. (*Washington* v. *Ogden,* 66 U. S. (1 Black) 450, 17 L. Ed. 203; *Linton* v. *Hichborn,* 126 Mass. 32; *McCool* v. *Jacobus,* 30 N. Y. Super. Ct. 115; *Gates* v. *Parmly,* 93 Wis. 294, 66 N. W. 253, 67 N. W. 739.) The purchaser has the right to expect the removal of defects before the time set (Maupin, above, 638; *Bell* v. *Stadler,* 31 Idaho, 568, 174 Pac. 129; *Higgins* v. *Eagleton,* 155 N. Y. 466, 50 N. E. 287), as the rule which allows a vendor to remove defects after the time

for final performance does not apply when time is of the essence of the contract. (Maupin, above, 883.)

The position of the plaintiff, briefly stated, is that the defendants were guilty of laches in attempting to rescind and did not effect a rescission, if timely, as they did not restore or tender what they had received under the contract, citing authorities (sec. 7567, Revised Codes 1921; *Lasby* v. *Burgess*, 88 Mont. 49, 289 Pac. 1028; *Friedrichsen* v. *Cobb*, above); and that plaintiff declared a forfeiture for defendants' failure to perform.

As heretofore shown, defendants could not challenge the title until time for final performance; when that time arrived, they challenged it by filing their cross-complaint within a week and were guilty of no laches; nor were they then seeking "rescission" of the contract; rather they sought to have the contract declared void for failure of consideration and the return of the money paid, with the declaration of a lien on the property and the foreclosure thereof.

Under the facts disclosed, the time of final performance was as definitely fixed at July 29, 1930, as it would have been had all payments been made up to the final payment required under the contract; it was then the duty of the plaintiff to be prepared to convey marketable title; failing in this duty, she could not declare the contract rescinded for the defendants' failure to accept a doubtful title (*Hale* v. *Cravener*, 128 Ill. 408, 21 N. E. 534), nor declare a forfeiture for failure to pay the amount then demanded (*Higinbotham* v. *Frock*, above); nor yet, being herself in default, maintain an action for rescission. (*Norris* v. *Letchworth*, above.)

On the other hand, when time is made of the essence of the contract, and, at the time set for performance, the vendor is not ready, willing and able to perform, the vendee is excused from tendering the balance due under the contract; nor need he tender performance (*Bozdech* v. *Montana Ranches Co.*, above; *Janulewycz* v. *Quagliano*, 88 Conn. 60, 89 Atl. 897; *Miller* v. *Beck*, 72 Or. 140, 142 Pac. 603; *Cleary* v. *Folger*, 84 Cal. 316, 24 Pac. 280, 18 Am. St. Rep. 187; Sugden

on Vendees, 395); and where, at the time fixed, neither party performs, the law considers the contract "at an end" (*Cleary* v. *Folger,* above), rather than rescinded by either party. A contract being thus at an end by reason of the default of the vendor, the vendor cannot force the vendee to relinquish possession of the premises until made whole as to the purchase money paid and money expended in making improvements. (*Stephens* v. *Black,* 77 Pa. 138; *Gans* v. *Renshaw,* 2 Pa. 34, 44 Am. Dec. 152; *Carter* v. *Fox,* 11 Cal. App. 67, 103 Pac. 910; Maupin, above, 884; see, also, *Apple* v. *Edwards,* 92 Mont. 524, 16 Pac. (2d) 700.)

By the filing of *lis pendens* the defendants secured a lien on the real estate, but the yielding of possession of all they had received, as required in the ordinary case of rescission (*Williams* v. *Hefner,* 89 Mont. 361, 297 Pac. 492), would have been a waiver of the lien on the personal property, under the contract "indivisible as to real and personal property."

Now, if a contract fails by reason of the vendor's lack of title, the vendee has an equitable lien upon all the property which the vendor contracted to convey and which was delivered to the vendee, as security for the repayment of money paid under the contract up to the time of its breach by the vendor in failing to convey a marketable title, and may retain possession, if necessary to protect the lien, until the equities of the parties are determined and when the matter is before a court of equity, or on the equitable side of the court an action is pending, the judgment will be so framed as to protect the rights of both parties, by decreeing the yielding of possession on payment of the amount received by the vendor, with proper expenditures for improvements made while the contract was in force, and less a proper allowance for rents and profits, if any. (*Taft* v. *Kessell,* 16 Wis. 291 (273); *Hall* v. *Bank of Baldwin,* 143 Wis. 303, 127 N. W. 969; *Garner* v. *Leverett,* 32 Ala. 410; *Cooper* v. *Merritt,* 30 Ark. 686.)

The judgment is reversed as to these appealing defendants and the cause remanded to the district court of Jefferson county, with direction to hear such further proof as either side

may produce upon the question of rental value and damages, and to thereupon enter judgment in accordance with this opinion, determining the rights of both parties.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied April 10, 1933.