## NAYLOR v. JOLLEY et al.

No. 6232. Decided March 21, 1941. (111 P. 2d 142.)

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellant.

*A. H. Christenson* and *A. Sherman Christenson,* both of Provo, for respondents.

MOFFAT, Chief Justice.

This is an action brought to recover damages for an alleged wrongful rescission and cancellation of a contract involving the sale and purchase of real property. The cause was tried to the court sitting without a jury and resulted in a nonsuit and judgment of dismissal upon the close of the presentation of evidence upon the part of plaintiff. Plaintiff appeals.

We are of the opinion the motion for the non-suit was properly granted. There is no conflict in the evidence.

It appears that on February 19, 1930, R. G. Jolley and Rachel H. Jolley, his wife, agreed to sell and Frank S. Naylor agreed to buy certain real property located in Utah County.

The stated consideration was $8,000 payable in installments. Two thousand dollars was paid upon the execution of the contract. The balance was to be paid in six annual installments of $1,000 each, on the 30th day of each November, beginning 1931. Interest at 6% per annum was to be paid on all deferred payments. There were the usual provisions as to possession, taxes, water assessments, etc.

The agreement provided that the sellers should furnish an abstract of title on or before October 1, 1930, showing marketable title. The purchaser was to have 30 days to examine and accept or reject the title. The abstract was not furnished as agreed. However, on the 28th of January, 1932, two additional written memoranda were entered into by the parties by which the original agreement was modified. The memorandum agreements show that there were difficulties as to title to part of the property. One

memorandum referred to corrections and to descriptions of land, conveyances to be had and removal of clouds upon title. It was agreed that the terms of the original contract should be inoperative as to the matters covered by the memoranda and the memoranda regarded as written into the original contract. Frank S. Naylor was to pay all taxes, assessments and water charges upon the premises falling due after the year 1929.

By the other of the two memoranda (both bear the same date), it was agreed there was then due (January 28, 1932) under the then status of the contract the sum of $1,000 principal and $360 interest to November 30, 1931; that Frank S. Naylor was entitled to credit thereon as follows:

"Kelly taxes $20.00; water tax 7.50; account of note favor of Maxfield and assigned to Naylor the sum of $150.00; total credit of $177.50, leaving a balance due on the 30th of November, 1931, installment under the contract of principal and interest in the sum of $1182.50.

"It is agreed that said Naylor shall pay in cash at this time $882.50, and that the balance of said sum to wit the sum of $300.00 will be deposited within ten days after this date with the Zions Savings Bank and Trust Co. of Salt Lake City to the credit of R. G. Jolley to be paid to him on exhibition of an abstract of title showing a deed from Knight Investment Co. to R. G. Jolley to the mineral rights, to special sections 71 and 72 in section 33 Township 7, South of Range 4 East S. L. M. together with deed from Henry Weight and wife, and deed from Dallas Holley and wife for lands heretofore deeded to said Weight and Holley in special sections 71 and 72 hereinabove referred to. It is understood that abstracts of the property sold will be brought down to date; that the purchaser shall have same for examination for a period of five days for the purpose of checking titles and same shall then be delivered to R. G. Jolley; the rights of the parties respecting title as agreed in the original contract are not affected hereby."

Naylor went into possession of the property at the time of entering into the original contract and remained in possession until 1937.

A notice bearing date March 11, 1937, advised Naylor that he was in default, specifying the defaults and requiring him to make the payments due within 45 days or the contract and his rights thereunder would be declared forfeited.

On August 16, 1937, a second notice of default was served which required Naylor to make any and all payments due. Upon failure for a period of 30 days to do so he was required to surrender possession of the property. The notice also indicated that upon tender of the purchase price the executors on behalf of the vendors were able, ready and willing to comply with the terms of the agreement in full.

The defaults specified in the notice were: "Principal and interest on principal, $5860; taxes for the years 1932, 1933, 1934, $393.32; together with interest thereon from the date of payment, $136.80 * * *" together with insurance premiums, water taxes, etc.

Soon after January 28, 1932, Naylor was given possession of the abstract. He kept it for sometime, then returned it and paid the $300 as agreed.

Admissions in the pleadings and the evidence, without conflict, show prior defaults and that the matters of title were adjusted up to January 28, 1932. The next payment became due November 30, 1932. This payment of $1,000 principal, besides $300 interest as well as taxes became due about the same time. No payment was made until July 5, 1933, when a payment of $20 was made. Other defaults are set out in the notices. At the time of the serving of the notices, the whole amount under the contract had become due and payable. In addition thereto taxes and other payments agreed to be made by Naylor were in default .

Appellant argues that because the respondents had failed and refused to furnish an abstract of title that they were not in position to rescind and cancel the contract. It is contended that the sellers were not the owners of the land at the time they made the contract.

In the case of *McAlpine* v. *Reicheneker*, 56 Kan. 100, 42 P. 339, the court held that where the vendor of land agrees to furnish the vendee an abstract of title within 30 days which was not done and the contract for a considerable time is regarded as in force the vendee will be deemed to have waived the performance of that part of the contract.

The evidence, in the instant case shows that the provisions of the original contract were modified and performed as modified by the vendors. The provision of the contract to furnish an abstract before October 1, 1930, was modified by the memorandum agreements. Further, it appears that at no time did the vendee tender payment or offer to perform. He stands upon the untenable position that he need not make tender until an abstract is delivered. He did not put himself in a position to be entitled to delivery of the abstract, although vendors had indicated abstract and clear title would be furnished upon tender.

It was originally contemplated under the first contract that good title would be shown, in October 1930, before the first installment became due, in November 1931. This was not done. Subsequent agreements modified this provision. Naylor had no complaint as to any alleged default of the Jolleys, as the latter were not obligated to present good title under the agreement as modified until time for final payment. Under a land contract calling for deferred payments and delivery of the deed at the time of the final payment, marketable title in vendor at the time he is required to deliver the deed is sufficient, the provisions in the contract expressly calling for earlier perfecting of title having been waived. *Silvas* v. *Asplund,* 93 Mont. 584, 20 P. 2d 631; Maupin on Marketable Title to Real Estate, Third Ed. 218, 219, 754; *Winkler* v. *Jerrue,* 20 Cal. App. 555, 129 P. 804; *Sherwood* v. *Daly,* 58 Idaho 744, 78 P. 2d 357.

During the year 1937, Naylor rented a portion of the property for $1,200 which may be presumed to be a reasonable rental value. From 1930 to the termination of the contract in 1937, a period of approximately seven years, appellant had not paid or expended, with allowance made for all claimed improvements, an amount in excess of the rental value. It is further shown that at the time of the trial vendor's executors held unencumbered title. In 1934, the court made orders in the two estates involved, authorizing the execution of deeds about which the title difficul-

ties existed. It was then merely a matter of executing and recording deeds pursuant to the orders of the court.

Judgment affirmed. Costs to respondents.

WOLFE, LARSON, McDONOUGH, and PRATT, JJ., concur.