NACEY ET AL., RESPONDENTS, v. CHENEY ET AL., APPEL-
LANTS.

(No. 5,060.)

(Submitted March 3, 1923. Decided April 14, 1923.)

[214 Pac. 647.]

*Contracts—Real Property—Vendor and Purchaser—Clear
Title—Patents to Public Lands—Reservation of Deposits of
Coal—"Encumbrances."*

Real Property—Vendor and Purchaser—Clear Title—Patents to Public
Lands—Reservation of Deposit of Coal an "Encumbrance."
    1.  In an action to have a certificate of deposit placed in bank by
    the purchasers of land as a guaranty for the performance of their
    contract declared forfeited for failure to complete it, defendants in
    a counterclaim asking the cancellation of the contract and that the
    certificate be returned to them because plaintiffs had not furnished
    an abstract showing a clear and perfect title, free from all liens and
    encumbrances as they had agreed to do, *held* that a reservation to
    the federal government, in the patent to the land, of the right to
    prospect for, mine and remove coal therefrom is an "encumbrance"
    sufficient to justify the purchaser in his refusal to complete the
    contract, where the vendor fails to take steps to remove the cloud
    upon the title as he may do under U. S. Comp. Stats., sections 4665
    and 4659.
Same—Clear Title—"Encumbrance"—Definition.
    2.  Every right to or interest in land granted, to the diminution
    of the value of the land, but consistent with the passing of the fee
    of it by the conveyance, is in law deemed an encumbrance.

*Appeals from District Court, Roosevelt County; C. E.
Comer, Judge.*

SUIT by P. J. Nacey and another against Guy Cheney and
others.  From a judgment for plaintiffs and from an order
overruling motion for a new trial, defendants appeal.  Re-
versed, with directions to dismiss the complaint.

*Mr. John Hurly* and *Mr. John A. Bird,* and *Messrs. Craven
& Converse,* of the Bar of North Dakota, of Counsel, sub-
mitted a brief; *Mr. John M. Cline,* of Counsel, argued the
cause orally.

What is a "clear and perfect title?" "A perfect title is
one which shows the absolute right of possession and of prop-

erty in a particular person. (*Wilcox Lumber Co.* v. *Bullock,* 109 Ga. 532, 35 S. E. 52.)'' (*Henderson* v. *Beatty,* 124 Iowa, 163, 99 N. W. 716, see, also, *Sheehy* v. *Miles,* 93 Cal. 288, 28 Pac. 1046; *Campbell* v. *Harsh,* 31 Okl. 436, 122 Pac. 127; *Bell* v. *Stadler,* 31 Idaho, 568, 174 Pac. 129.)

"The term 'encumbrances' includes taxes, assessments, and all liens upon real property." The statutory definition does not limit the meaning of "encumbrance" to taxes, assessments and liens. (*Fraser* v. *Bentel,* 161 Cal. 390, Ann. Cas. 1913B, 1062, 119 Pac. 509.) A railroad right of way is an encumbrance. (*Farrington* v. *Tourtlott,* 39 Fed. 738), or an easement of any kind (4 Words & Phrases, 3522, and cases cited). Or a reservation in a deed reserving to the grantor the right to prospect for coal and other minerals within and underlying the land granted, and to mine and remove the same, if found, and reserving right of way for such purpose. (*Jones* v. *Gardner,* 10 Johns. (N. Y.) 266.)

A contract to convey by warranty deed is a contract to convey perfect title. (*Tupy* v. *Kocourek,* 66 Ark. 433, 51 S. W. 69; *Pomeroy* v. *Drury,* 14 Barb. (N. Y.) 418.)

It is plain here, that, as to 570.51 acres, there is a failure of title, *i. e.,* as to the coal, a part of the land, and an easement to prospect, mine and remove. (*Adams* v. *Henderson,* 168 U. S. 573, 42 L. Ed. 584, 18 Sup. Ct. Rep. 179 [see, also, Rose's U. S. Notes]; *Stambaugh* v. *Smith,* 23 Ohio St. 584; *Eversole* v. *Eversole* (Ky.), 85 S. W. 186; *Sweet* v. *Berry,* (Tex. Cr.), 236 S. W. 531; *Linscott* v. *Moseman,* 84 Kan. 541, 114 Pac. 1088.) Likewise, the reservation in patents of a right of way for ditches or canals constructed by authority of the United States, is an encumbrance on the title. (*Cosby* v. *Danziger,* 38 Cal. App. 204, 175 Pac. 809; *Wingard* v. *Copeland,* 64 Wash. 214, 116 Pac. 670.)

The reservations render the title imperfect, though appellants had knowledge thereof. Because B knows that A has not title at the time of making a contract to sell, A will not be excused from delivering title and B cannot be com-

pelled to take something for which he never contracted. (*Justice* v. *Button,* 98 Neb. 367, 38 L. R. A. (n. s.) 1, 131 N. W. 736; *Eriksen* v. *Whitescarver,* 57 Colo. 409, 142 Pac. 413; *Snowden* v. *Derrick,* 14 Cal. App. 309, 111 Pac. 757; *Thompson* v. *Dickerson,* 68 Mo. App. 535; *Mincy* v. *Foster,* 125 N. C. 541, 34 S. E. 644; *Taylor* v. *Evans,* 177 Pa. 291, 69 L. R. A. 790, 35 Atl. 1135; *Propper* v. *Colson,* 86 N. J. Eq. 399, 99 Atl. 385; *Doyle* v. *Emerson,* 145 Iowa, 358, 124 N. W. 176.) The attempt to show that appellants knew of the reservations is an attempt to vary the terms of the written contract. (*Hogan* v. *Kelly,* 29 Mont. 485, 75 Pac. 81; *Newmyer* v. *Roush,* 21 Idaho, 106, 120 Pac. 464; *McCullough* v. *Bauer,* 24 N. D. 109, 139 N. W. 318.)

*Mr. C. C. Hurley* and *Mr. F. J. Matoushek,* for Respondents, submitted a brief; *Mr. Hurley* argued the cause orally.

Under a contract of the character of the one involved here, both the vendor and vendee have certain duties to perform. Each should conduct himself so as to deal fairly, honestly with the other and neither should be permitted to resort to any subterfuge or evasion for the purpose of taking an unfair advantage of the other. While plaintiffs by their contract, agreed to furnish an abstract showing clear and perfect title, this does not mean that the plaintiffs were required to furnish a title beyond any technical objections that might be urged against it. All that plaintiffs were required to do was to furnish what is known in law as a "marketable title." (39 Cyc. 450.) "This does not necessarily mean that the first abstract submitted must show marketable title. After the abstract is submitted, the vendee should point out any matters appearing therein which he objects to. After the objections are pointed out to the vendor, the vendor has a reasonable time thereafter to correct any defects urged by the vendee." (*Allstead* v. *Nicol,* 123 Cal. 594, 56 Pac. 452; *Lessonich* v. *Sellers,* 119 Iowa, 314, 93 N. W. 348.) "No attention need be given the abstract save as criticised by the requisition of the

examiner, other defects if any, thereby being waived."
(*Plummer* v. *Kennington*, 149 Iowa, 419, 128 N. W. 52; 29
Cyc. 1524; *Webster* v. *Kings County Trust Co.*, 145 N. Y.
275, 39 N. E. 964.)

Reservations of the character involved in this action were
fully considered by the supreme court of Idaho in the case of
*Schurger* v. *Moorman*, 20 Idaho, 97, Ann. Cas. 1912D, 1114,
36 L. R. A. (n. s.) 313, 117 Pac. 122. In this case, the court
said: "It must be considered that every person who deals
with or contracts with reference to any land in this state
reclaimed under the Carey Act of Congress and the Acts of
the legislature accepting the provisions thereof, does so with
notice that easements and rights of way are granted through
and over such lands both by the general government and by
the Acts of the legislature." (See, also, *Newmyer* v. *Roush*,
21 Idaho, 106, Ann. Cas. 1913D, 433, 120 Pac. 464.)

It seems to be the established law that a covenant in a
contract against encumbrances includes only such defects as
are designated as encumbrances by the statute. (*Sisk* v. *Caswell*, 14 Cal. App. 377, 112 Pac. 185; *Ferguson* v. *Edgar*, 178
Cal. 17, 171 Pac. 1061.)

We respectfully submit that the facts surrounding this
case in reference to the reservations contained in the patents
to the land in question, and with appellants' opportunity to
observe and know of the existence of the same, together with
their knowledge as to the source of title to lands, that the
doctrine of *caveat emptor* would apply. (39 Cyc. 1278.)

If the covenantee intended to include all encumbrances of
the two general kinds he should have taken the pains to
explicitly so declare in the agreement and no doubt would
have done so had that been his intention. Here it clearly
appears that the plaintiffs were able, ready and willing to
comply with their part of the contract and that the defendants failed and refused to comply with their part. That
under these conditions, the plaintiffs are entitled to have the
money deposited forfeited to them as their liquidated dam-

ages. (*Glock* v. *Howard & Dilson Colony Co.*, 123 Cal. 1, 55 Pac. 713); *Robben* v. *Benson*, 37 Cal. App. 227, 173 Pac. 766); *Thresher* v. *Clark*, 45 Cal. App. 518, 188 Pac. 55.)

MR. JUSTICE COOPER delivered the opinion of the court.

On May 28, 1920, the plaintiffs entered into a written contract with the defendants E. G. Wilkinson, Guy Cheney and W. M. Rainbolt, whereby they agreed to furnish an abstract "showing clear and perfect title, free from all liens, taxes or encumbrances," and to convey to them by general warranty deed certain real estate situated in Roosevelt county, with all appurtenances, water rights and other "rights to said land belonging and now thereon," the defendants to pay all taxes and assessments for the year 1920, and all years prior thereto, and to pay the interest to become due October 1, 1920, upon a note in the sum of $1,200, secured by a mortgage upon part of the lands, the total purchase price, including the mortgage, to be the sum of $35,000. Of the further provisions therein only the following need be set forth: "It is further agreed by the parties hereto, that if said first party has not obtained title to about 159 acres of the above-described land and is unable to convey said title, that the said first party will execute a warranty deed describing all said lands hereinbefore described except as to that which he does not now have title, and will deliver said deed to the Citizens' State Bank of Culbertson, Montana, at Culbertson, Montana, for said parties of the second part, and said first party further agrees that he will do all things necessary to obtain title to the land above mentioned as to which he does not now have title and as soon as such title is obtained, which he further agrees shall not be later than August 1, 1920, he will execute a general warranty deed conveying said land to said second parties and furnish abstract of title showing said land clear and free from all encumbrances. This contract to be performed within fifteen days except as to about 160 acres."

Contemporaneously with the execution and delivery of the agreement, the defendants placed with the Citizens' State Bank of Culbertson, Montana, a cash certificate of deposit in the sum of $5,000 as a guaranty for the performance of the contract upon their part. On the back thereof are the following indorsements:

"Upon approval of papers by second parties in P. J. Nacey and Cheney, Wilkinson, Rainbolt contract pay the within to P. J. Nacey, otherwise hold this subject to my order.

"[Signed]     W. M. RAINBOLT.

"If second parties fail to fulfill their part of the contract and said first party can and is ready to perform this part, then the within shall be forfeited to said first party.

"[Signed]     W. M. RAINBOLT.

The cause was tried as one in equity. In this court the argument is confined to the question whether the evidence is sufficient to show a compliance by the plaintiffs with their undertaking to furnish an abstract showing "a clear and perfect title, free from all liens, taxes and incumbrances." The plaintiffs contend that they fully met the demands of the contract, but that for some reason not disclosed by the evidence, before the time for fulfillment had expired, the defendants arbitrarily refused to make the purchase. The patents upon which title to 570.51 acres—more than half of the land involved—rests reserves to the government of the United States, or to persons authorized by it, the right to prospect for, mine and remove coal from the same upon compliance with the conditions and subject to the limitations of the Act of March 3, 1909, 35 Stats. 844 (6 Fed. Stats. Ann., p. 608, U. S. Comp. Stats., sec. 4665).

The court found that the abstract was forwarded to Rainbolt at his request on June 17; that he submitted it to an attorney in the city of Omaha, Nebraska, for examination; that the attorney returned it to Rainbolt, who forwarded it to Mr. Lewerenz, as plaintiffs' agent, accompanied by a letter of his own in which were pointed out objections to the title, and

suggestions made as to how the abstract should be corrected and amplified, and requested that the "usual reservations" spoken of therein be fully set forth; that on June 25 defendants took possession of the premises; that on July 13 the plaintiff P. J. Nacey, Mr. Matoushek and Mr. Lewerenz met the defendants in a room in the Citizens' State Bank at Culbertson, where the imperfections in the abstract were canvassed, and at the end of the discussion the plaintiffs tendered documents correcting the defects specified by defendants and offered a warranty deed conveying the premises to defendants. The court also found that the plaintiffs were ready, able and willing to comply with their contract "as far as the same could be complied with at that time," and that defendants refused to accept the deed or to go on and complete the purchase. Upon these findings the court rendered judgment, ordering the certificate of deposit canceled and the proceeds thereof delivered to plaintiffs. From the judgment and order denying a new trial, defendants have appealed.

Did the reservations of the coal rights constitute an en- [1, 2] cumbrance? In *Mackey* v. *Harmon*, 34 Minn. 168, 24 N. W. 702, it is said: "If the right or interest of the third person is such that the owner of the servient estate has not so complete and absolute an ownership and property in his land as he would have if the right or interest spoken of did not exist, his land is, in law, diminished in value and encumbered."

In *Prescott* v. *Trueman*, 4 Mass. 627, 3 Am. Dec. 246, Chief Justice Parsons, delivering the opinion for the court, said: "Every right to, or interest in the land granted, to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance, must be deemed in law an encumbrance. * * * Thus a right to an easement of any kind * * * is an encumbrance."

Says the supreme court of Pennsylvania, in *Speakman* v. *Forepaugh*, 44 Pa. 371: "If there be a color of an outstand-

ing title which may prove substantial, though there is not enough in evidence to enable the chancellor to say that it is so, a purchaser will not be held to take it, and encounter the hazard of litigation with an adverse claimant.''

In *Batley* v. *Foerderer*, 162 Pa. 460, 28 Atl. 868, the title to a lot was passed ''under and subject to the condition that no mill, factory, brewery or distillery shall be erected on the said several lots of ground or any part or parcel thereof.'' Of this the court remarked: ''It must be conceded that a title thus clogged with restrictions cannot be regarded as either 'good or marketable' or 'clear of all encumbrances.' ''

*Stambaugh* v. *Smith*, 23 Ohio St. 584, was an action on a covenant against encumbrances. It was held that a deed whereby all the iron ore and coal upon certain of the lands, with a right of way and other privileges for their removal, constituted an encumbrance within the meaning of a covenant that the lands were ''free from all encumbrances whatsoever.''

When it is ascertained that there is an existing defect in the title, the purchaser will not be compelled to perform on the allegation that it is doubtful whether the defect will ever incommode him. If there be any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, it is a circumstance which renders the bargain a hard one for the purchaser, and one which the court will not, in the exercise of its discretion, compel him to execute. (*Seaman* v. *Vawdrey*, 16 Vesey, 39.)

Chief Justice Marshall, in *Garnett* v. *Macon*, Fed. Cas. No. 5245, said that the decisions were not entirely confined to cases of doubtful title, but applied ''to encumbrances of every description, which may, in any manner, embarrass the purchaser in the full and quiet enjoyment of his purchase.''

A conveyance of timber on land and the right to remove it therefrom was held to be an encumbrance, in *Cathcart* v. *Bowman*, 5 Pa. 317. An outstanding oil lease was held, in *Sweet* v. *Berry* (Tex. Civ. App.), 236 S. W. 531, to convey an in-

terest in the land, to affect the title, and to render it un-marketable.

The finding that the plaintiffs were ready, able and willing to comply with their contract "as far as the same could be fully complied with" on July 14 was not, as is apparent, that the plaintiffs had fulfilled their contract according to its terms. Neither is it in harmony with the undisputed evidence which then showed the title to have been burdened with the right of the government or its grantee to mine and remove coal from under the surface. Under the provisions of the Act of April 14, 1914 (Chap. 55, 38 U. S. Stat. 335 [6 Fed. Stats. Ann., p. 613, U. S. Comp. Stats., sec. 4665a]), it was possible for the plaintiffs to have had the lands examined for the purpose of ascertaining whether there were in fact deposits of coal beneath the surface, and in case there were none, the title could then have been cleared of that overhanging cloud; or had such examination demonstrated that there were deposits of coal thereunder, the plaintiffs might have acquired all the rights reserved by the government under section 4659 of the Compiled Statutes of the United States. Had the plaintiffs, however, adopted either of the courses indicated, the title they now insist fulfills their obligation might have been freed of a very serious defect. The very purpose of the covenant to furnish "a perfect title free from all liens and encumbrances whatsoever" was to preserve the rights of the defendants in their bargain, and to give them a title which would insure their peaceable and uninterrupted use and occupancy of the lands for which they were to pay the price. Confronted as they were with a title which would expose them to a dual right of possession with third persons because of the coal reservations, it cannot be said that the defendants were capricious or unreasonable in refusing to complete their proposed purchase; especially in view of the fact that, after the attention of the plaintiffs had been directed to the coal reservations still outstanding, they gave no indication of their willingness to obtain the relief

allowed by the statutes above referred to. The defects in the title thus pointed out were enough to justify the defendants in refusing to go further in the performance of their obligations under the contract and to insist upon the return of the certificate of deposit. As to the other reservations in the patent no opinion is, or need be, expressed.

The cause is reversed, with directions to dismiss the complaint.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.