WILLIAMS ET AL., APPELLANTS, *v.* HEFNER, RESPONDENT.

(No. 6,726.)

(Submitted January 17, 1931.   Decided March 23, 1931.)

[297 Pac. 492.]

362

*Mr. E. C. Kurtz* and *Mr. Harry H. Parsons,* for Appellants, submitted an original and a reply brief; *Mr. Parsons* argued the cause orally.

364

*Messrs. O'Hara, Madeen & Grant,* for Respondent, submitted a brief; *Mr. Robert A. O'Hara* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action in ejectment. It was tried to the court without a jury, resulting in judgment and decree in favor of defendant, from which plaintiffs have appealed.

The complaint is in the usual form. It alleges plaintiffs' ownership of 240 acres of certain described real estate situated in Ravalli county, wrongful possession by defendant, and claim for damages. The answer contains a general denial and affirmative defenses and cross-complaints.

In general, the affirmative defenses allege that plaintiffs sold the property in question to defendant under a written contract; that defendant has paid $3,000 as part of the purchase price, and is willing to pay the balance of $3,000 due under the contract, but that plaintiffs have failed to deliver a marketable title and have breached the contract; that defendant has expended $1,500 for improvements, which, together with the purchase price paid, he is entitled to have returned to him and to remain in possession until it is paid. The cross-complaints reiterate the allegations of the affirmative defenses, and allege that defendant has a lien on the property for the value of the improvements and for the payments made on the purchase price, less the value of the use and occupation during the time he was in possession of the property.

The prayer of the answer is for judgment for the amounts paid on the purchase price, with interest, for $1,500 expended for improvements, less the value of the use and occupation of the premises, that these sums be declared to be a lien upon the property, for the foreclosure of the lien, and for a deficiency judgment in case the proceeds of the sale are not sufficient to discharge the lien, and that defendant have possession until expiration of the time for redemption from the foreclosure sale.

Plaintiffs' general demurrer to the answer was overruled. The reply admits the making of the contract of sale and that defendant paid $3,000 as part of the purchase price, but denies the other allegations of the answer and cross-complaints.

The evidence need not be here reviewed. It is sufficient to say that it sustains the findings of fact which we deem material in consideration of the questions involved.

The court found that Almira Williams, Martha Keyes, John Christy, Fred Christy, Alex Christy, Tom Christy, and Charles

Christy, as the sons and daughters and only heirs of George Christy, deceased, succeeded to the rights of George Christy, former owner of the property involved. Plaintiff Mamie Christy is the wife of John Christy, and plaintiff Mary Christy is the wife of Tom Christy. On March 31, 1927, plaintiff John Christy applied for, and was thereafter granted, letters of administration upon the estate of Charles Christy, and thereafter a decree of distribution was entered, distributing the one-seventh interest of Charles Christy in the property to the plaintiffs, other than Mamie Christy and Mary Christy, share and share alike; that Charles Christy left his home at Woodside, Ravalli county, in July, 1903, stating he was going to North Dakota, and has not been heard from since that time; that in 1927 his estate was administered solely upon the presumption that a person not heard from in seven years is dead; that, prior to the death of George Christy, he and his wife, who is now deceased, made, executed, and delivered to the Northern Pacific & Montana Railroad Company a warranty deed covering a parcel of land containing 3.58 acres, for a right of way 100 feet in width across the lands here involved; and that on March 31, 1927, plaintiffs and defendant entered into a contract whereby plaintiffs agreed to sell, and defendant to buy, the property.

The contract describes the land by subdivisions, and makes no mention of the railroad right of way. By the agreement it was stipulated that plaintiffs would sell and convey "by good and sufficient deed" the described land. Defendant agreed to pay $500 down, $2,750 when the deed would be placed in escrow, and $2,750 one year thereafter. The agreement provided that the estate and interest of Charles Christy should be probated and distributed, the grantors agreeing that they would commence proceedings therefor during the month of April, 1927, and to conclude the proceedings as expeditiously as possible, and thereafter place a deed in escrow with the Citizens' State Bank of Hamilton to be delivered to defendant upon payment of the full purchase price of the land, with

interest. Defendant agreed to pay all taxes on the land, and was to have possession not later than April 5, 1927. Time was made of the essence of the contract, and it was stipulated that in case of default on the part of the defendant in the payment of the purchase price, or in the payment of taxes, the plaintiffs should have the right of re-entry.

Defendant paid to plaintiffs $500 on March 31, 1927, and took possession of the property. In October, 1927, defendant paid $2,500. In April, 1929, defendant, in seeking to obtain a loan with which to pay the balance due on the contract, was advised that plaintiffs could not convey title free from doubt, and on May 28, 1929, defendant served written notice on plaintiffs to the effect that he was ready, able, and willing to pay the balance due under the contract as soon as plaintiffs furnished marketable title, and pointed out in the notice that the deed furnished by plaintiffs was not a good and sufficient deed because plaintiffs had no marketable title to the undivided one-seventh interest of Charles Christy. On June 25, 1929, plaintiffs served written notice on defendant to the effect that they had executed a deed and placed it in escrow to be delivered to defendant upon payment of the balance of $3,000 due under the contract, and that, unless it was paid within one month, the agreement would be treated as null and void, and that action to recover possession would be commenced without further notice. The deed which had been placed in escrow was dated September 1, 1927, and made no reference to the railroad right of way.

The court found that the buildings and other improvements, including the clearing and plowing of land made by defendant upon the property, were of the value of $813.40; that the interest on the money paid by defendant to plaintiffs amounted to $586.60; that the taxes on the property are unpaid and delinquent; that the rental value of the property during the time defendant was in possession to the date of the trial amounted to $1,400.

From the findings the court concluded as matters of law: (1) That plaintiffs cannot give defendant a title free from reasonable doubt; (2) that the conveyance to the railroad company is a breach of the covenant against encumbrances; (3) that plaintiffs are trustees of the legal title for the defendant to the extent of the payments made by defendant to plaintiffs; (4) that defendant is entitled to a judgment against plaintiffs for the moneys paid, amounting to $3,000; (5) that defendant is entitled to a lien upon the property as security for the repayment of the $3,000; (6) that defendant is entitled to his costs. Judgment was entered accordingly.

The first question for consideration is whether the court erred in admitting evidence, over plaintiff's objection, in support of the affirmative defenses and cross-complaints. The objection was upon the ground that the allegations were insufficient to constitute defenses or cross-complaints in an action in ejectment. As noted above, in effect they allege that plaintiffs have breached their contract, in that they have failed to tender a good and sufficient deed to the property, and that therefore defendant is entitled to a judgment for the purchase price paid, together with interest, and the value of improvements made, less the reasonable value of the use and occupation of the land during the time the defendant has been in possession.

In legal effect, defendant by his answer seeks a rescission of the contract of purchase. That is the relief awarded by the court. Defendant sought and obtained a decree placing him *in statu quo,* but he did not surrender possession of the property or offer to do so. That he must surrender possession before being permitted to rescind is clear under section 7567, Revised Codes 1921, which makes it incumbent upon the party seeking to rescind a contract to ''restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.'' (See, also, *Como*

*Orchard Land Co.* v. *Markham*, 54 Mont. 438, 171 Pac. 274; *Fontaine* v. *Lyng*, 61 Mont. 590, 202 Pac. 1112; note, 34 A. L. R. 1325; 27 R. C. L. 654; 39 Cyc. 1424; 25 Cal. Jur. 723.) And the pleading must allege an offer to restore the premises. (25 Cal. Jur. 728.) Defendant cannot rescind the contract and at the same time affirm it. (*Advance-Rumely Thresher Co.* v. *Terpening*, 58 Mont. 507, 193 Pac. 752.) He cannot retain possession by virtue of the contract, thus treating the contract as subsisting, and at the same time seek its rescission or recover damages for its breach by plaintiff. (*Jordan* v. *Morony*, 250 Mich. 593, 231 N. W. 80.)

While ejectment will not lie against a vendee not in default (*Prosper* v. *Smith*, 67 Mont. 308, 215 Pac. 649), yet if, as here, the vendee elects to seek recovery of the amounts paid by him, and in effect rescinds the contract, he must restore possession to the vendor. If the defendant can establish a lien upon the property, it is no defense to an action in ejectment, for the possession may be awarded to the rightful claimant and the lien still be allowed to stand. (19 C. J. 1085.)

It was error on the part of the court to admit evidence in support of the affirmative defenses and cross-complaints. They contain no allegation of an offer to restore possession of the property to plaintiffs, and therefore are insufficient to justify a decree rescinding the contract. They contain no defense to plaintiffs' action for the possession of the property.

The answer, however, contains a general denial of the allegations of the complaint, and to that extent was sufficient. We need not here determine what evidence was admissible under the general denial. Certain it is that under such a plea to a complaint in ejectment defendant may not introduce proof to sustain his right to a rescission of the contract and for recovery of the amounts paid by him thereunder, while continuing in possession of the property. (19 C. J. 1119.)

The judgment in defendant's favor must be set aside. Whatever view may be taken of the defensive matter attempted

to be set up by defendant, plaintiffs were entitled to a decree placing them in possession of the property, for the rule ▆ is universal that, if the purchaser concludes not to comply with his contract because the title of the vendor is defective, he must surrender possession of the property. (34 A. L. R. 1325; *Hincksman* v. *Delacour*, 47 Cal. App. 416, 190 Pac. 832; *Mayer* v. *West*, 96 Cal. App. 31, 273 Pac. 849; *Burnett* v. *Caldwell*, 9 Wall. (U. S.) 293, 19 L. Ed. 712; *Flint* v. *Conner*, 53 Cal. App. 279, 200 Pac. 37; *Hoffman* v. *Remnant*, 72 Cal. 1, 12 Pac. 804.)

Since the rights of the parties must be litigated by further proceedings, under appropriate pleadings, for the benefit of the parties we will consider the question as to who is in default under the contract, in so far as the record enables us to do so, with the view of enabling the court to determine whether defendant is entitled to recover back the purchase price paid by him.

Defendant contends that the title tendered by plaintiffs is ▆ defective, and hence that plaintiffs are in default, because the one-seventh interest formerly belonging to Charles Christy was administered solely upon the presumption that he is dead. No question is raised by defendant, nor could it well be, that the proof was insufficient to justify the presumption of death. Subdivision 26 of section 10606, Revised Codes 1921, specifies as one of the disputable presumptions "that a person not heard from in seven years is dead." This presumption is one that is available "for all legal purposes" (9 R. C. L. 708), and "in all courts" (*Donovan* v. *Major*, 253 Ill. 179, 97 N. E. 231), and presents a prima facie case sufficient to warrant a grant of letters of administration on the estate of the absentee (*In re Liter's Estate*, 19 Mont. 474, 48 Pac. 753; 23 C. J. 1007, 1008). Of course, if the absentee is in fact alive at the time of administering the estate, the proceedings are void (*Scott* v. *McNeal*, 154 U. S. 34, 38 L. Ed. 896, 14 Sup. Ct. Rep. 1108; *Beckwith* v. *Bates*, 228 Mich. 400, 37 A. L. R. 819, 200 N. W. 151), but the proceedings are not void until knowledge of this

fact is ascertained (*Sligh* v. *Whitley*, 41 Ga. App. 428, 153 S. E. 237; *Donovan* v. *Major*, supra). But this is true whether the probate proceedings rest upon a misapprehension of the fact of death or upon the presumption. (*Savings Bank of Baltimore* v. *Weeks*, 110 Md. 78, 22 L. R. A. (n. s.) 221, 72 Atl. 475.)

The supreme court of Minnesota, in speaking of this question, in *Bornemann* v. *Ofsthun*, 175 Minn. 493, 221 N. W. 876, 878, said: ''Of course, as said in that connection, it may later appear that the supposed decedent was in fact alive at the time an administrator was appointed. In such case the presumption of death will be overthrown by proof *contra*, and the proceedings for administration will fall for lack of jurisdiction. The same thing happens where the proof of death supporting the administration of the estate of one supposedly dead, whether direct or circumstantial, turns out to be false or misleading, as it might in the case of the mistaken identification of the body of a dead person as that of someone else. In such a case, also, the administration proceeding must fall for want of jurisdiction. So there is nothing anomalous about the same result, where the mistaken proof of death consists alone of the presumption, rather than direct or circumstantial proof.''

The petition for letters of administration alleged ''that Charles Christy died on or about the first day of July, 1911, in the state of North Dakota, so far as known to your petitioner.'' It is contended by defendant that this is not a sufficient allegation of death of Charles Christy to give the court jurisdiction to appoint an administrator. We think the petition sufficiently alleges the death of Charles Christy, and the fact that it is made to appear that the allegation is based upon the presumption of death from seven years of silence does not affect the sufficiency of the petition. (*Bornemann* v. *Ofsthun*, supra.) In the absence of any proof that Charles Christy was in fact alive at the time of the probate proceedings, resulting in the distribution of his estate to plaintiffs,

it cannot be said that plaintiffs' title is defective on this account. (See 57 A. L. R. 1465, *Day* v. *Kingsland,* 57 N. J. Eq. 134, 41 Atl. 99, and *Greenblatt* v. *Hermann,* 144 N. Y. 13, 38 N. E. 966.)

It remains to determine whether the title was defective by reason of the railroad right of way.

"A covenant to execute and deliver a good and sufficient deed imports that the vendor will furnish a good title to the land." (*Lindeman* v. *Pinson,* 54 Mont. 466, 171 Pac. 271, 272.) And a "good title" means a marketable or merchantable title. (*Gantt* v. *Harper,* 82 Mont. 393, 267 Pac. 296; *Ogg* v. *Herman,* 71 Mont. 10, 227 Pac. 476; *Bozdech* v. *Montana Ranches Co.,* 67 Mont. 366, 216 Pac. 319; *Nacey* v. *Cheney,* 67 Mont. 56, 214 Pac. 647.)

Here, the railroad right of way was conveyed by plaintiffs' predecessors in interest by a warranty deed in June, 1890. In December, 1928, the right of way was conveyed by the railway company to the state of Montana by a quitclaim deed. Defendant, on May 28, 1929, notified plaintiffs that he was ready to pay the balance due on the contract when a good and sufficient deed would be furnished to him, and indicated in the notice that the title was defective regarding the estate of Charles Christy, but nothing was said in the notice about the title being defective because of the railroad right of way. But defendant testified that, when he gave the notice, he did not know of the defect regarding the right of way. He said he saw the right of way when he went over the land. It is about thirty rods from the house. Attorney Howard Packer examined the abstract of title for defendant before he bought the land, and he said the title was good as far as he could see. But the title offered, and not the abstract, determines the right of the purchaser to rescind. (*Larson* v. *Thomas,* 51 S. D. 564, 57 A. L. R. 1246, 215 N. W. 927.)

It should be noted that there is nothing in the record to indicate whether the railroad right of way was in use or operation by the railway company at the time defendant entered into the contract of purchase and during the time

that defendant occupied the land, or whether it had been abandoned for use as a railroad right of way.

There is a conflict in the authorities as to whether the existence of a known railroad right of way in use upon land at the time it was purchased constitutes a breach of the covenant against encumbrances. (7 R. C. L. 1138; *Schafroth* v. *Ross*, (C. C. A.) 289 Fed. 703; and notes in 57 A. L. R. 1436.) We think the better reasoned cases hold that such a right of way, when known to exist, and when in actual use at the time of making the contract, is not an encumbrance, for the reason that the parties will be held to have contracted with reference to it. But, since there is no evidence in the record that the railroad right of way was in use as such at the time the contract in question was made, we cannot say that the court erred in holding that it constitutes a breach of the covenant against encumbrances. Upon a retrial, further evidence on this point may be adduced.

But, assuming that the right of way constitutes an encumbrance, it does not follow that defendant is entitled to rescind the contract on that account. There is no evidence showing, or tending to show, that the right of way constitutes a material portion of the property involved, or that it formed any special inducement to the purchase. Under such circumstances, defendant's remedy is to seek an abatement of the purchase price or damages.

The rule is stated in 2 Black on Rescission and Cancellation, second edition, section 436, as follows: "According to most of the authorities, if the vendor of land is unable to make a good title to any material portion of the property which he has contracted to convey, the purchaser will have a right to rescind the contract as a whole. On the other hand, if the portion of the land which is or may be lost to the purchaser through the failure of his vendor's title is insignificant in comparison with the whole, did not form any special inducement to the purchase, is not essential to the use or enjoyment of the remainder of the land, so that the loss of it will not

materially detract from the value of the residue, the purchaser will not have the right to rescind the contract, but must seek compensation in a proportional abatement of the price or in the recovery of damages." (See, also, note in 57 A. L. R. 1508.) This rule is specially applicable where, as here, defendant took the land with notice of the existence of the right of way and made no special inquiry concerning it (*Kimmel* v. *Scott*, 34 Neb. 493, 52 N. W. 371; *Demaret* v. *Bennett*, 29 Tex. 262), and where there is no evidence showing that the right of way will materially affect the use and enjoyment of the remainder of the land.

The question will naturally arise whether it is now too late for defendant to obtain any relief in case the right of way is held to be an encumbrance, since the time for making final payments under the contract, computed from the time the deed was placed in escrow, has long since passed. We think this case presents facts justifying application of the rule stated in section 8658, Revised Codes 1921, which provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty."

We think that, since the questions regarding the title furnished to defendant were fairly debatable, in case it be held upon another trial that the right of way constitutes a breach of the covenant against encumbrances within the rule as we have stated it, defendant should be allowed a reasonable time to tender the balance of the purchase price to plaintiffs, less the difference in the value of the land because of the right of way, if he desires so to do. If he elects not to do so, or if the right of way be held not to constitute a breach of the covenant against encumbrances, then plaintiffs have a right to the possession of the land and to a cancellation of the contract.

The judgment is set aside and the cause remanded for further proceedings in conformity with the views herein stated.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Matthews concur.